BAILEY GLASSER LLP

D. Todd Mathews
tmathews@baileyglasser.com

November 11, 2026

The Honorable Noël Wise
United States District Court, Northern District of California
280 South First Street, San Jose, California 95113

**Re: MDL No. 3199: Response to the Leadership Applications of Hunter J. Shkolnik, Mark A. DiCello, Jennifer M. Hoekstra, and Edwin J. Kilpela, Jr.**

Dear Judge Wise:

Under Section VII of Pretrial Order No. 1, the undersigned respond to the applications of Hunter J. Shkolnik (ECF No. 62), Mark A. DiCello (ECF No. 68), Edwin J. Kilpela, Jr. (ECF No. 72), and Jennifer M. Hoekstra (ECF No. 78). We support Lee Floyd, D. Todd Mathews, and Patrick Lannen as Co-Lead Counsel, Doris Cheng as Liaison Counsel, and the nine Plaintiffs' Steering Committee applicants who have identified their support for one another. The factors the Court weighs—qualifications, resources, fair representation of the interests in the litigation, and the ability to command colleagues' respect and work cooperatively—favor this group. Manual on Complex Litigation §§ 10.22, 10.224.

1. **Our leadership is ready to lead and try these cases for the MDL clients.**

The plaintiffs here are individuals, mostly women, who allege that an AirTag was used to track, stalk, harass and otherwise harm them. The plaintiffs allege intimate personal injury claims, and their damages are physical injury, fear, and trauma. The Co-Leads we support have built their practices representing similarly situated clients in coordinated proceedings and taking their cases to verdict.

Their applications set out their records in full; a few points bear emphasis. Ms. Floyd won a $360 million verdict in 2024 for three clients that were sexually abused, has chaired bellwether and discovery work in the *Paragard*, *Hair Relaxer*, and *Suboxone* MDLs; and, as a former Butler Snow partner who defended Johnson & Johnson and Bayer, knows how a corporate defendant will litigate this MDL. Mr. Mathews is Co-Lead/Liaison Counsel in Maryland Child Victims Act proceedings involving more than 12,000 abuse claims *and* 35 plaintiffs' firms; leads litigation for more than 3,000 survivors of Illinois juvenile detention abuse; and was co-lead trial counsel for talc claimants in the first Johnson & Johnson bankruptcy, which was resolved in favor of the claimants. Mr. Lannen leads the day-to-day work in the *Keffer* MDL where he represented women whose sensitive images were covertly captured and sold; obtained a $141 million settlement without objection for 8,242 women secretly recorded in *Doe v. Henry Ford Health System*; and was appointed to leadership in a JCCP representing more than 7,000 women abused in California prisons.

Mr. Shkolnik argues that leadership should not go to "lawyers who have never led a major litigation against a formidable adversary." That does not accurately describe a group that has gone to verdict against a multibillion-dollar healthcare system, defeated Johnson & Johnson in bankruptcy court twice, and led coordinated proceedings against two states; much less defended the very adversaries Mr. Shkolnik describes as formidable.

2. **A team, not a group of leaders.**

An MDL is run by a team whose members bring different skills, not by a group in which everyone wants to lead. The group we support is comprised of thirteen firms with defined roles that have worked together from the first filings. Ms. Cheng of the Walkup Law Firm has tried 19 jury trials to verdict and was Liaison Counsel in the *Pacific Fertility* JCCP; Apple does not object to her appointment. Lieff Cabraser has served as court-appointed lead counsel in hundreds of coordinated actions and holds leadership roles in the *Social Media*, *Uber*, *Lyft*, and *Roblox* MDLs in this District. Girard Sharp leads the *Uber* and *Roblox* MDL's and previously led *Juul* and *Xyrem* MDLs, all in this District. Brian Perkins was Co-Lead Counsel in the *Pradaxa* JCCP and has tried more than 250 cases. The Bailey Glasser firm contributed more than 9,000 hours of ESI time to the *Toyota Sudden Acceleration* MDL in this District. Erin Copeland is Lead Counsel in the *Paragard* MDL and co-lead counsel of the *Suboxone* MDL; Molly Condon Wells was Liaison Counsel in the *Tepezza* MDL; Sejal Brahmbhatt is a member of the PSC in the *Proton Pump Inhibitor* MDL; Meredith Stratigopoulos co-chairs the case-specific committee in the *Uber* MDL in this District.

These lawyers complement one another rather than compete for the same role, and each firm has agreed to take on defined work—ESI and discovery, experts, law and briefing, fact sheets, bellwethers, and state-federal coordination—under Co-Lead Counsel.

The opposing applicants take a different approach. Four lawyers each seek a lead role and support one another; their only other supporters are Ms. Grombacher, who did not apply, and the only steering committee applicant is from Ms. Hoekstra's own firm. No local law firm has voiced support for their group. Four co-leads with no identified team beneath them cannot staff an MDL of this size and sophistication, and support drawn almost entirely from the applicants themselves does not show the "ability to command the respect of their colleagues." MCL § 10.224. Nor can the Court assess whether that structure would offer a range of independent perspectives, since any team would come either from the applicants' own firms or from attorneys recruited after the application deadline.

3. **The work to build this MDL has been done by this group.**

Past conduct is the best predictor of how counsel will lead. Ms. Floyd and Mr. Mathews filed the motion for centralization, and Ms. Floyd and Mr. Lannen argued for it before the JPML. Since then, this group has led months of meet and confers with Apple that produced a pseudonym process, initiated a process to address unsubstantiated claims, conducted weekly meetings of all plaintiffs' counsel nationwide, led the drafting, reconciliation, and finalization of the Rule 16.1 report and other material relevant to the MDL, and obtained vendor bids. MCL § 10.221.

4. **This is an MDL of individual injury claims, not the continuation of a class action.**

We respect prior counsel's work in *Hughes v. Apple, Inc.*, No. 3:22-cv-07668-VC. But Mr. Kilpela states that "[t]his MDL is new; this litigation is not" and asks that discovery "begin where Hughes left off"; Ms. Hoekstra cites her "hybrid class and personal injury MDL" experience as "directly relevant"; and Mr. DiCello cites preparing for a class trial in a case in which no class was certified and no merits discovery was conducted.

This case is not a class action, and the work in *Hughes*, while relevant, is barely the starting point for this MDL. The opposing applicants' reliance misapprehends what kind of case this is. *Hughes* was a putative class action; certification was denied, discovery was halted, only about 250,000 pages of Apple documents were produced, and not a single defense witness was deposed. A class-certification record cannot substitute for the merits discovery individual injury claims require: what Apple knew about AirTag stalking, when, what safety designs it rejected, and how those decisions caused each plaintiff's injuries. Lead counsel in an MDL are responsible for "conducting discovery." *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (N.D. Cal. 2021). Efficiency requires making the *Hughes* discovery available so plaintiffs can build on it, but plaintiffs here must be permitted to pursue the additional discovery necessary to develop their individual injury claims, which were not the focus of the class-certification proceedings in *Hughes*. Our group will treat *Hughes* as a starting point, not a ceiling.

5. **Federal-state coordination.**

Mr. Kilpela's firm lists five AirTag cases in California Superior Court, and Mr. Kilpela and Mr. DiCello have moved to form a Judicial Council Coordination Proceeding in which their firms intend to seek co-lead roles. MDL and JCCP leadership are normally distinct, with overlap limited to steering committees. This is for good reason: if the same firm or firms run both, there will be pressure—from Apple most obviously—to make one the priority. MDL lead counsel owe a duty to all MDL plaintiffs, and the MCL directs courts to consider interests that could affect counsel's representation. MCL § 10.224. At a minimum, any appointee should disclose all state-court coordination efforts.

6. **Conclusion.**

Plaintiffs respectfully ask the Court to appoint Lee Floyd, D. Todd Mathews, and Patrick Lannen as Co-Lead Counsel, Doris Cheng as Liaison Counsel, and the Plaintiffs' Steering Committee applicants who support their appointment.

Respectfully submitted,

D. Todd Mathews, Lee Floyd, Patrick Lannen, Doris Cheng, Andrew Kaufman, Erin Copeland, Molly Condon Wells, Caitlin Woods, Sejal Brahmbhatt, Amada Klevorn, Elizabeth Castillo, Meredith Stratigopoulos, and Brian Perkins